IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BECKY KELLY,<br><br>        Plaintiff,<br><br> v.<br><br>RITE AID CORPORATION GROUP LIFE INSURANCE PLAN # 502, an ERISA Welfare Benefit Plan; RITE AID CORPORATION, a Delaware Corporation; RELIASTAR LIFE INSURANCE COMPANY, a Minnesota Corporation; and STANDARD INSURANCE COMPANY, an Oregon Corporation, and PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation,<br><br>        Defendants. | Case No. CV-09-472-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendant Prudential Insurance Company of America's Motion for Judgment on the Pleadings (Docket No. 34) against Plaintiff Becky Kelly. Prudential requests judgment on the pleadings dismissing all of Plaintiff's claims against Prudential. This Court finds that Plaintiff's Complaint does not allege that Lonnie Kelly was a participant in Prudential's life-insurance policy, and that Plaintiff therefore lacks statutory standing to bring an ERISA claim against

**Memorandum Decision and Order - 1**

Prudential. The Court also finds that Plaintiff's state law claims for negligence and breach of contract do not allege that Prudential had a duty to Plaintiff because the Complaint does not allege that Prudential actually provided life-insurance coverage to Lonnie Kelly. Accordingly, the Court will grant Prudential's motion. The Court also grants Plaintiff leave to amend the Complaint.

## BACKGROUND

This case arises from a life-insurance plan that Becky Kelly's decedent, Lonnie Kelly, allegedly purchased and maintained through Rite Aid Corporation. Lonnie Kelly was employed with Rite Aid from October 1967 through April 22, 2000, and again from August, 1, 2001 until September 29, 2001. Lonnie Kelly stopped working because of a disability and continued to receive certain benefits through Rite Aid, including health insurance. Shortly after Lonnie Kelly's death on November 20, 2006, Lonnie Kelly's wife, Becky Kelly, inquired as to whether there were any death benefits from any life insurance on Lonnie Kelly's which may have been obtained through Rite Aid. Each of Rite Aid's insurers denied coverage, stating that Lonnie Kelly's coverage lapsed sometime in May 2001 because Lonnie Kelly failed to convert his group coverage to the individual coverage available to

**Memorandum Decision and Order - 2**

disabled/inactive employees.[1]  Whether Lonnie Kelly was required to continue making premium payments to maintain life-insurance coverage is unclear, but Lonnie Kelly appears to have believed that a waiver applied to him and that he did not need to continue making premium payments to maintain his life-insurance policy.

During the period in question, 2000–2006, Rite Aid provided life insurance to its employees through three different insurers: Reliastar Life Insurance Company, Standard Insurance Company, and Prudential.  According to the Complaint, each insurer provided life insurance during the following time periods.

- Reliastar Group Policy # 641689: at least January 2000 – June 30, 2001
- Standard
  - Group Policy # 17092-5: July 1, 2001 – June 30, 2005
  - Group Policy # 641335-D: July 1, 2005 – June 30, 2006
- Prudential Group Policy # G-44686: July 1, 2006 – at least November 20, 2006.

Rite Aid offered two different types of life insurance.  Rite Aid provided group life-insurance coverage equal to two times Lonnie Kelly's annual earnings.

---

[1] The Complaint refers to both inactive and disabled employees, though whether these are different or similar statuses under the insurance policies at issues is unclear.  The court assumes these terms are interchangeable.

**Memorandum Decision and Order - 3**

Rite Aid also offered, and Lonnie Kelly took advantage of, supplemental life insurance that provided three times Lonnie Kelly's annual earnings. Lonnie Kelly's annual earnings before his disability were $70,720. Plaintiff alleges that Rite Aid and its insurers therefore owe her $353,600 in death benefits.

The parties do not appear to dispute that Lonnie Kelly maintained life-insurance coverage until November 22, 2000, at which time Lonnie Kelly's short-term disability benefits reached their limit. In order to continue receiving benefits through Rite Aid, Lonnie Kelly made contributions for long-term disability coverage. The Complaint alleges that although specific calculations were made regarding medical, dental, and long-term disability coverage, Rite Aid did not mention life-insurance coverage or the need to make payments for continued life-insurance coverage.[2] Lonnie Kelly's long-term disability coverage ended July 21, 2005.

It appears that Reliastar and Standard were also the insurers for Lonnie Kelly's other benefits. The Complaint alleges that both Reliastar and Standard accepted Lonnie Kelly's payments and provided benefits, but that neither mentioned life-insurance coverage, notified Lonnie Kelly of his right to convert to

---

[2] The time at which Lonnie Kelly made these changes was also apparently the time at which Lonnie Kelly should have converted to individual coverage. Plaintiff later refers to this as the alleged failure to send a "conversion letter."

**Memorandum Decision and Order - 4**

individual life-insurance coverage, or explained to Lonnie Kelly that a waiver of premium payments for his life-insurance policy did not apply. The Complaint alleges that Reliastar and Standard were responsible for ensuring that Lonnie Kelly received this information. The Complaint further alleges that, at least with respect to Standard, a grandfather clause is applicable that should have triggered a list of disabled employees to be covered by the then-new policies with Standard in 2001. Plaintiff admits that Standard required premium payments to maintain life-insurance coverage.

Regarding Prudential, the Complaint alleges that Prudential denied death benefits to Becky Kelly because Lonnie Kelly had not converted his group life-insurance policy to an individual life-insurance policy at the time his employment ended. The Complaint also alleges that Prudential does not have a copy of the conversion opportunity letter, but only a computer notation that the letter had been sent. Finally, the Complaint also appears to assume that Prudential had a grandfather clause that covered inactive employees.

Based upon these allegations, the Complaint claims that Prudential owes Plaintiff death benefits in the amount of $353,600, that Prudential breached ERISA fiduciary duties, that Prudential violated ERISA document disclosure obligations, Prudential negligently failed to advise Lonnie Kelly of his rights under the policy

**Memorandum Decision and Order - 5**

and affirmatively misrepresented that Lonnie Kelly had a waiver of premium and did not need to continue paying for coverage, and that Prudential's failure to pay death benefits constitutes a breach of contract under Idaho state law.

On December 7, 2009, Prudential filed its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) requesting dismissal of all of Plaintiff's claims against Prudential.[3]  Prudential contends that Plaintiff does not have statutory standing to sue Prudential, Plaintiff is not a participant or beneficiary of a Prudential policy and that Plaintiff does not have a colorable claim to death benefits.  Prudential also argues that Plaintiff cannot sue Prudential because Prudential is not the "Plan Administrator" and cannot violate the document disclosure requirement.

As to Plaintiff's state law claims, Prudential argues that Plaintiff's negligence claims fails because Prudential does not owe a duty of care to Plaintiff. Prudential also argues that it could not have breached a contract with Plaintiff because no contract existed.

## ANALYSIS

I.   <u>Standards Governing Motions to Dismiss Under Rules 12(b)(6) and 12(c)</u>

---

[3] Prudential's motion is functionally a motion to dismiss for failure to state a claim under Rule 12(b)(6).  The Court is unsure why Prudential instead filed under Rule 12(c).

**Memorandum Decision and Order - 6**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The court may grant a party's motion for judgment on the pleadings if the moving party clearly establishes that, on the face of the pleadings, "'no material issue of fact remains to be resolved and that [the moving party] is entitled to judgment as a matter of law.'" *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (*quoting* C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1368, at 690 (1969) (footnote omitted)).

Although a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 535 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility if the plaintiff pleads factual content that allows the court to draw the reasonable inference that

**Memorandum Decision and Order - 7**

the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate if the plaintiff has included sufficient allegations disclosing an absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*,

**Memorandum Decision and Order - 8**

119 F.3d 778, 783 n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).[4]

II.    Discussion

    A.    ERISA Claims

---

[4] Although the *Disabled Rights Action Committee* and *Knievel* decisions concern Rule 12(b)(6) motions to dismiss, the Court sees no reason not to apply the same rules to a Rule 12(c) motion for judgment on the pleadings. The Court, therefore, will consider the contract attached to Defendant's Reply because the contract is referenced in Plaintiff's Complaint. The Court recognizes that Plaintiff objected to the contract attached to the initial motion. For this reason, the Court will not consider the contract attached to the Motion for Judgment on the Pleadings.

**Memorandum Decision and Order - 9**

1.      Death Benefits

A participant or beneficiary in an insurance plan covered by ERISA may "recover benefits due to him under the terms of his plan, . . . enforce his rights under the terms of the plan, or . . . clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[5] Enforcement rights under 29 U.S.C. § 1132(a) depend upon whether a person has statutory standing, which means that a party claiming benefits must be either a plan participant or beneficiary. *Id.* § 1132(a)(1). A plan participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." *Id.* § 1002(7). This definition encompasses "former employees who have . . . a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (citations and internal quotation marks omitted). A beneficiary is defined as "a person designated by a participant . . . who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

In this case, the relevant issue is whether Lonnie Kelly was a participant in, and consequently whether Becky Kelly was a beneficiary of, Prudential's life-insurance plan at the time of Lonnie Kelly's death. *See Miller v. Rite Aid Corp.*,

---

[5] The parties do not dispute that ERISA covers this case.

**Memorandum Decision and Order - 10**

504 F.3d 1102, 1105–06 (9th Cir. 2007); *id.* at 1107 (holding that the alleged participant's date of death is the proper date to assess plan participation). At the time of Lonnie Kelly's death, he did not qualify as a participant in Prudential's life-insurance policy, # G-44686. At most, the facts alleged in the Complaint indicate that Rite Aid, Reliastar, or Standard did not follow-up on a group of inactive employees that had some kind of "grandfathered" coverage and would retain full life-insurance coverage without paying a premium. Even if Prudential has a similar grandfather clause that would bridge the gap between Standard and Prudential, the claim against Prudential can only succeed if Standard actually covered Lonnie Kelly.

The Complaint alleges only that Standard should have covered Lonnie Kelly because of its grandfather clause. Whatever error occurred regarding a notice to convert and the lack of life-insurance coverage did not occur at a time Prudential could have been responsible for that error. According to the Complaint, the latest time at which the alleged error in coverage occurred was when Standard, not Prudential, provided life-insurance coverage for Rite Aid. With respect to Lonnie Kelly, whether Prudential had an obligation to investigate grandfathered employees, and failed to do so, is irrelevant. Such an investigation would never have yielded Lonnie Kelly's name because Standard never actually provided life-

**Memorandum Decision and Order - 11**

insurance coverage to Lonnie Kelly.

The alleged lack of notice regarding Lonnie Kelly's right to convert from group insurance coverage to an individual policy occurred sometime in late 2000 or early 2001, a time when Reliastar provide coverage. Prudential was not Rite Aid's insurer until mid-2006. By Plaintiff's admission, Prudential's computer system indicated that Lonnie Kelly had received notice of his right to convert. This Court cannot find any requirement in either the ERISA statute or case law that would require Prudential to double-check that all disabled or inactive employees actually received notice of a right to convert from a different insurer. Moreover, Plaintiff does not allege that Prudential's contract with Rite Aid imposed such a requirement on Prudential.

Plaintiff, therefore, does not have statutory standing and is barred from bringing an ERISA claim under 29 U.S.C. § 1132(a)(1)(A) against Prudential. For the same reasons, Plaintiff cannot recover attorney's fees from Prudential based on her § 1132(a)(1)(A) claim. *See* 29 U.S.C. § 1132(g).

    2.    <u>Breach of Fiduciary Duty</u>

A participant or beneficiary of an insurance plan covered by ERISA may recover from a fiduciary for breach of a fiduciary duty. 29 U.S.C. §§ 1109(a), 1132(a)(2). A fiduciary is not, however, "liable with respect to a breach of

**Memorandum Decision and Order - 12**

fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." *Id.* § 1109(b).

Enforcement rights under 29 U.S.C. § 1132(a)(2) depend upon whether a person has statutory standing. That is, a party claiming benefits must be either a plan participant or beneficiary. *Id.* § 1132(a)(2). For the same reasons discussed above, Lonnie Kelly was not a plan participant in Prudential's life-insurance policy. Plaintiff, therefore, does not have statutory standing and is barred from bringing an ERISA claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2). For the same reasons, Plaintiff cannot recover attorney's fees based on her § 1132(a)(2) claim against Prudential. *See* 29 U.S.C. § 1132(g).

### 3. Disclosure Obligations

A requesting participant or beneficiary may recover statutory penalties if the plan administrator does not supply statutorily designated information about an insurance plan. 29 U.S.C. § 1132(c)(1). Enforcement rights under 29 U.S.C. § 1132(c)(1) depend upon whether a person has statutory standing. *See Harris v. Amgen Inc.*, 573 F.3d 728, 732 (9th Cir. 2009) (citation omitted). That is, a party claiming benefits must be either a plan participant or beneficiary. *Id.* For the same reasons discussed above, Lonnie Kelly was not a plan participant in Prudential's life-insurance policy. Plaintiff, therefore, does not have statutory standing and is

**Memorandum Decision and Order - 13**

barred from bringing an ERISA claim for failure to disclose under 29 U.S.C. § 1132(c)(1).

    B.    <u>Idaho State Law Claims</u>

        1.    <u>Negligence</u>

Under Idaho law, the elements of negligence are: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Doe v. Cutter Biological, A Div. of Miles, Inc.*, 852 F. Supp. 909, 918 n.13 (D. Idaho 1994) (citations and internal emphasis omitted).

Here, Plaintiff's allegations—that Prudential negligently failed to advise Lonnie Kelly of his rights under his life-insurance policy and affirmatively misrepresented that Lonnie Kelly had a waiver of premium—may have constituted negligence if Prudential had a duty to Lonnie Kelly. As discussed above, the alleged errors occurred sometime before Prudential became Rite Aid's insurer. The Complaint does not allege that Prudential actually provided life-insurance coverage for Lonnie Kelly. Prudential did not have a duty to Lonnie Kelly because the parties never had a contractual, or any other kind of, relationship that would have triggered Prudential's duty to Lonnie Kelly regarding life insurance. *See Coghlan*

**Memorandum Decision and Order - 14**

*v. Beta Theta Pi Fraternity*, 987 P.2d 300, 311 (Idaho 1999) ("An affirmative duty to aid or protect arises only when a special relationship exists between the parties.") (citation omitted). Therefore, Plaintiff's claim of negligence against Prudential fails because Prudential did not owe a duty to Lonnie Kelly.

The Court also denies Plaintiff's request for attorney's fees, pursuant to Idaho Code §§ 12-120, 12-121, regarding Plaintiff's negligence claim against Prudential.

### 2. Breach of Contract

Plaintiff also alleges that Prudential's failure to pay death benefits constitutes a breach of contract under Idaho law. For the same reasons discussed above in Part II.A.1, Lonnie Kelly was not a plan participant in Prudential's life-insurance policy and therefore did not have a life-insurance contract with Prudential. Plaintiff, therefore, cannot bring a claim for breach of contract under Idaho law. The Court also denies Plaintiff's request for attorney's fees, pursuant to Idaho Code §§ 12-120, 12-121, regarding Plaintiff's breach of contract claim against Prudential.

## III. Leave to Amend

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v.*

**Memorandum Decision and Order - 15**

*Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (citation omitted). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Here, in response to Prudential's motion for judgment on the pleadings, Plaintiff raises a third-party beneficiary claim as to the contract between Rite Aid and Prudential. Prudential did not reply to this argument. Under Idaho law, party may enforce a contract as a third-party beneficiary "if a party can demonstrate that [the] contract was made expressly for his benefit." *Baldwin v. Leach*, 769 P.2d 590, 592 (Idaho 1989) (*citing* Idaho Code Ann. § 29-102). In order to show that the contract was made expressly for the party's benefit, "the party must show that the contract made for his direct benefit and that he is not merely an incidental beneficiary." *Id.* (citation omitted).

Although the Complaint does not currently allege a third-party beneficiary claim against Prudential, Plaintiff could amend the Complaint to cure this defect.

**Memorandum Decision and Order - 16**

*See Livid Holdings*, 416 F.3d at 946.  The Court, therefore, will grant Plaintiff leave to amend the Complaint with respect to claims against Prudential.

## ORDER

IT IS THEREFORE ORDERED that Defendant Prudential Insurance Company of America's *Motion for Judgment on the Pleadings* (Docket No. 34) is GRANTED without prejudice.

Plaintiff is GRANTED leave to amend the Complaint.

DATED:  **April 26, 2010**

_____
B. LYNN WINMILL
Chief Judge
United States District Court